# In the United States Court of Federal Claims

No. 14-1176C
(Filed: February 22, 2016)
NOT FOR PUBLICATION

* * * * * * * * * * * * * * * * * * * *

SHANNA CLEWLEY and COLT
CLEWLEY

                Plaintiffs,

v.

THE UNITED STATES,

                Defendant,

* * * * * * * * * * * * * * * * * * * *

Rule 12(b)(1); Rule 12(b)(6); Subject matter jurisdiction; Failure to state a claim upon which relief can be granted; Breach of duty of good faith and fair dealing

_____

## OPINION

_____

BRUGGINK, *Judge.*

In their complaint, plaintiffs allege that the United States breached two contracts with plaintiffs concerning a home mortgage and subsequent debt settlement. Pending before the court is defendant's motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). As explained further below, the motion is granted in part and denied in part.

## BACKGROUND[1]

In 2005, the Rural Housing Service ("RHS"), an agency within the United States Department of Agriculture ("USDA"), entered into an adjustable rate mortgage agreement with plaintiffs to facilitate the construction of a

---

[1] The facts in this opinion are drawn primarily from the complaint and attached documents.

single-family home in Florissant, Colorado, pursuant to Section 502 of the Housing Act of 1949. 42 U.S.C. §§ 1441-1490t (2012). After plaintiffs moved in, they discovered numerous construction defects, such as faulty plumbing, protruding screws and nails, a leaky bathtub, and mold spreading throughout the property. Over the next six years, plaintiffs made their monthly payments despite the condition of their home.

In the spring of 2011, plaintiffs' monthly payments increased beyond what they could afford, and they were unable to refinance the debt. Plaintiffs requested a lower monthly payment from RHS, but the agency declined. Plaintiffs stopped making mortgage payments in October 2011. In January 2012, RHS denied plaintiffs' request to restart their monthly payments and demanded that the loan be brought current in one lump sum, as was its prerogative under the provisions of the loan agreement.

Unable to pay the balance, plaintiffs entered into a contract to sell the home for $101,000 in March 2012, which was roughly $85,000 less than the remainder on the mortgage. RHS agreed to the short sale but did not release plaintiffs from the remaining debt. On June 9, 2012, plaintiffs submitted a debt settlement application to RHS, asking RHS to forgive the rest of the loan amount. Plaintiffs allege that they received oral assurances from unnamed individuals at RHS that the remainder of the debt would be forgiven if they sold the property and then submitted the application for settlement of the debt.[2] Plaintiffs received no written response to this application, however. In a letter dated June 19, 2012, RHS agreed to release its mortgage lien on the property to allow the sale to close, but reminded plaintiffs that they remained responsible for the outstanding balance owed. On July 10, 2012, the sale of plaintiffs' home closed.

Around October 2013, plaintiffs discovered that the USDA had disclosed to credit reporting agencies that plaintiffs were still in debt to RHS, behind in their payments, and subject to a lien of foreclosure. This prevented them from closing on a new home in South Dakota. Plaintiffs then inquired about the status of their application for debt settlement from June 2012, and RHS instructed them to resubmit the application. Plaintiffs renewed their zero dollar offer, which was declined by the agency in or around January 2014.

---

[2] Plaintiffs' amended complaint, like their original complaint, does not identify when this communication occurred or with whom. We assume it occurred during the Spring of 2012. *See* Am. Compl. ¶¶ 47-49.

RHS then countered with an offer to lower the amount owed from $79,713.31 to $59,784.98.  Plaintiffs sent a new counteroffer in February 2014, but RHS never responded to it.  Plaintiffs sent the same counteroffer again in May 2014. In June 2014, RHS provided another offer of settlement, which plaintiffs did not accept.

In May 2014, plaintiffs sent a letter to RHS asking for either response to their last settlement offer or a formal determination on their initial application to settle the debt.  They also requested information on how to appeal the agency's decision should RHS deny their application.  In early June 2014, RHS responded with another counteroffer but no formal decision on their application.  Plaintiffs sent another letter early the next month, again requesting from RHS a formal determination on their original application for debt settlement and again seeking information on how to appeal any adverse decision. No response was received.

Plaintiffs filed suit in this court on December 8, 2014.  On February 6, 2015, defendant filed a motion to dismiss for lack of jurisdiction and failure to state a claim for which relief can be granted.  We granted that motion in part, dismissing allegations of tort and requests for review of agency administrative action. We denied the motion as to plaintiffs' contract claims but directed plaintiffs to amend their complaint to plead the contract claims with specificity.

The amended complaint contains four counts: 1) a breach of the implied duty of good faith and fair dealing resulting from the agency's alleged failure to follow procedures mandated by the Housing Act of 1949; 2) breach of an oral contract to settle the debt by submitting an application after the short sale; 3) breach of the implied duty of good faith and fair dealing arising from the short sale agreement's requirement to notify plaintiffs if the agreement was rejected, by misrepresenting facts to credit reporting agencies, and by mandating that plaintiffs use a firm for the design and construction of their home; and 4) breach of warranty regarding the construction defects.

Defendant moved to dismiss the amended complaint on August 25, 2015, once again for lack of jurisdiction and failure to state a claim. Plaintiffs' subsequently filed a stipulation of voluntary dismissal of their fourth cause of action (breach of warranty).  The motion to dismiss is fully briefed, and oral argument is unnecessary.

## DISCUSSION

We begin with the question of jurisdiction.  If we find it, we must then determine whether plaintiffs have stated claims upon which relief can be granted.  A mere "formulaic recitation of the elements of a cause of action" is insufficient to survive a motion to dismiss under Rule 12(b)(6). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, factual allegations are presumed to be true unless challenged, and "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989).  Plaintiff bears the burden of proving that the court has subject-matter jurisdiction, and we may consider evidence outside the pleadings in deciding the issue.  *Reynolds*, 846 F.2d at 747-48.  For the purposes of rule 12(b)(6), we assume the factual allegations to be true and consider whether they state a claim that entitles plaintiffs to relief.

I. Jurisdiction

Defendant again moves for dismissal of claims based on the decision of RHS not to accept plaintiffs' offer to settle the debt and for claims based on misrepresentation, as beyond our jurisdiction.  Defendant also moves to dismiss the claim of breach of warranty from faulty construction as arising outside of the statute of limitations.  Plaintiff has resolved the latter issue by voluntarily dismissing it.

As an initial matter, to the extent that plaintiffs are once again alleging a breach of statutory and administrative rights under the Housing Act of 1949, any such claims have already been dismissed by our order of July 10, 2015.  *Clewely v. United States*, No. 14-1176C, 2015 WL 4178063, at *3 (Fed. Cl. July 10, 2015).  The same is true for tort claims arising out of alleged misrepresentation. Contractual claims, however, come within our jurisdiction. So we consider them below in the 12(b)(6) analysis.

II. Failure To State A Claim Upon Which Relief May Be Granted

Defendant argues that plaintiffs have generally failed to plead the existence of a contractual duty breached by the government.  More specifically, as defendant points out, plaintiffs' application for debt settlement was not a written contract because it was not accepted by RHS.  The existence of an oral agreement under the terms of which the agency would forgive plaintiffs' debt after closing of the short sale and subsequent submission of a zero-dollar offer of debt settlement is illusory, according to the government, because the parties' subsequent conduct–offers and counteroffers–belies the notion of an earlier offer and acceptance.  Lastly, defendant argues that the procedural rights allegedly breached by the government under the Housing Act were not incorporated by reference and thus cannot support a contract claim.  Defendant concludes that, in the absence of an enforceable contract provision, plaintiffs' assertions regarding the implied duty of good faith fail as a matter of law because they do not rest upon a substantive provision of a contract.

Plaintiffs respond first that the loan agreement expressly incorporated the Housing Act of 1949 and its implementing regulations, citing the first page of that agreement, which was attached to the amended complaint.  That being the case, a substantive contractual duty to follow statutory and regulatory procedures in the processing of the Clewley's debt settlement application was alleged to have been breached, which can support a claim for breach of the duty of good faith and fair dealing, argue plaintiffs.  Second, plaintiffs argue that they did have an agreement with RHS regarding the short sale and debt forgiveness.  That they cannot yet identify the person or persons at the agency who bound the government is not to be charged against them prior to the opportunity for discovery, urge plaintiffs.  Construed in their favor, the amended complaint alleges a valid oral agreement, which implies authority on the part of the agency's representative(s).  Thus, plaintiffs argue that the allegation is sufficient to survive a motion to dismiss for failure to state a claim.

A.  The Loan Agreement

We begin with the original loan agreement for the construction of plaintiffs' home.  It states on the first page that

this promissory note is made pursuant to title V of the Housing Act of 1949.  It is for the type of loan indicated . . . at the top of this note.  This note shall be subject to the present regulations of

the Government and to its future regulations not inconsistent
with the express provisions of this note.

Am. Compl. Ex. A at 1.  The top of that page indicates that it is a "SECTION
502" loan.  Section 502 is codified at 42 U.S.C. § 1472.  Plaintiffs draw from
this that the requirements of that statutory section and implementing
regulations are incorporated by reference.  These include a regulatory
requirement of timely response to debt settlement applications, which plaintiffs
allege they did not receive here.

Defendant argues that this scant reference to the act does not
incorporate it or its implementing regulations into the contract.  Defendant
cites consideration of a very similar provision by the Federal Circuit in
*Smithson v. United States*, 847 F.2d 791 (Fed. Cir. 1988).  That case dealt with
a loan through the USDA's Farmers Home Administration program.  The loan
agreement there stated that it was "subject to the present regulations of the
secured party [agency] and to its future regulations not inconsistent with the
express provisions hereof."  *Id.* at 794.  The Federal Circuit held that this
language was too general to specifically incorporate regulatory provisions into
the contract, noting that the mass of regulations which would be potentially
included by the broad language of the clause would include countless pages
bearing no relation to the parties' loan agreement.  *Id.*

We start with the general rule that a contract "must use clear and
express language of incorporation, which unambiguously communicates that
the purpose is to incorporate the referenced material."  *Precision Pine &
Timber, Inc. v. United States*, 596 F.3d 817, 826 (Fed. Cir. 2010).  A contract's
"passing reference to the entire corpus of [an act]" does not "automatically
result in 'wholesale incorporation' of that statute."  *Id.* (quoting *Smithson*, 847
F.2d at 794).  Under this standard, it is clear that the clause cited by plaintiffs
is insufficient to incorporate the Housing Act or its myriad of implementing
regulations into the contract.  The reference to the Housing Act of 1949 and
the listing of "SECTION 502" as the type of loan are recitations of the
authority pursuant to which the agency entered the contract.  The additional
language indicating that the contract was subject to present and future
"regulations of the government" is not even limited to the act at issue and is
even broader than the language rejected by the *Smithson* court.

As we stated in our earlier opinion, the Housing Act and its
implementing regulations provide for enforcement of procedural rights through
an administrative process and eventually the district courts.  This court will not

interject itself into that process under the guise of a breach of contract allegation when that breach is premised on only a general reference to an authorizing statute and an even more general reference to "government regulations" past and future.

B.  The Short Sale Agreement

We are left then with the allegation that the parties agreed to settle the remaining debt under the original loan agreement by effectuating a short sale to a third party contemporaneous with a zero-dollar debt settlement. Defendant alleges that the amended complaint, although alleging that such an agreement was orally entered into, evidences that no agreement was reached when it details the parties' subsequent and ultimately fruitless negotiations for a debt settlement.  Defendant also points out that plaintiffs have failed to identify the individual or individuals with whom an agreement was struck or whether this person had authority to bind the government.  Plaintiffs respond that they have alleged a colorable claim for breach of oral contract and that it is too early, prior to discovery, to consider the merits.

Although the amended complaint lacks detail with regard to this oral agreement, it meets the bare requirements of Rule 9(k).  The outline of the terms of an agreement are presented: in exchange for a short sale to a third party by plaintiffs, RHS agreed to settle the debt in total upon completion of a settlement application. Am. Compl. ¶¶ 45-53.  This is "an identification of the substantive provisions of the contract . . . on which the party relies" as required by the rule.  RCFC 9(k).

The fact that the amended complaint identifies subsequent failed negotiations for a debt settlement, while relevant, is not fatal to the initial allegation that an agreement was entered into by the parties.  Plaintiffs continued to ask RHS to act on its initial application, which is not conclusively inconsistent with the idea that plaintiffs believed they already had an agreement by the agency to accept that application.  Plaintiffs view the subsequent fruitless negotiations as evidence of breach and/ or bad faith on the part of the government.  Taken in the light most favorable to plaintiffs, we cannot discard the complaint on the basis that some allegations in the complaint are viewed by defendant as inconsistent with others.  This is only a disagreement as to the facts and not a reason to grant a motion under rule 12(b)(6).

While plaintiffs may face a difficult task in proving the elements of an enforceable oral contract, the amended complaint, when taken in the light most favorable to plaintiffs, pleads a cognizable claim within our jurisdiction for breach of an oral contract.  The fair inference to be drawn from the allegations is that whoever represented RHS in its negotiations with plaintiffs had authority to bind the government.  That may not ultimately be proven, but that is not for the court to decide when presented with a motion to dismiss under Rule 12(b)(6).

CONCLUSION

As explained above, defendant's motion to dismiss for lack of jurisdiction is granted to the extent that the amended complaint seeks review of RHS' actions under the applicable statutory and regulatory scheme and granted as to plaintiffs' claims for tortious conduct.  We also grant the motion to dismiss plaintiffs' claim under the original loan agreement for failure to state a claim.  What remains of the complaint is plaintiffs' claim for breach of an oral agreement to release the remaining debt upon completion of a short sale and debt settlement application and the attendant claim for breach of the duty of good faith and fair dealing arising from the same alleged conduct.  The parties are directed to confer and propose further pretrial proceedings in a joint status report to be filed on or before March 18, 2016.


s/ Eric G. Bruggink
ERIC G. BRUGGINK
Judge

8